# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PEGGY WALTON,

      Plaintiff,

vs.                                                                             No. CIV 13-0343 JB/KBM

NEW MEXICO STATE LAND OFFICE,
RAY POWELL, DONALD BRITT, and
DELMA BEARDEN,

      Defendants.

## SUPPLEMENTAL MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment on Plaintiff's Second Amended Complaint to Recover Damages for Discrimination and Retaliation and for Violations of Constitutional Rights, filed November 6, 2013 (Doc. 38)("MSJ"). The Court held hearings on April 9, 2014, and April 10, 2014. The primary issues are: (i) whether Plaintiff Peggy Walton was engaged in a protected activity to warrant protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and under the

---

[1]On August 27, 2014, the Court issued two orders. The first granted in part and denied in part the Defendants' Motion for Summary Judgment on Plaintiff's Second Amended Complaint to Recover Damages for Discrimination and Retaliation and for Violations of Constitutional Rights, filed November 6, 2013 (Doc. 38). See Order, filed August 27, 2014 (Doc. 85)("MSJ Order"). The second denied the Motion for Summary Judgment of Defendants' Ray Powell, David Britt, and Delma Bearden as to Count VI of the Second Amended Complaint on Grounds of Qualified Immunity, filed November 27, 2013 (Doc. 52). Order, filed August 27, 2014 (Doc. 85)("QI Order"). On September 12, 2014, the Court issued a Memorandum Opinion explaining its rationale for the QI Order. See Memorandum Opinion, filed September, 12, 2014 (Doc. 91)("MO"). In the MO, the Court stated that, at a later date, it would supplement the MO "to address the remaining issues from the MSJ Order." MO at 1. This Supplemental Memorandum Opinion is the promised supplemented opinion and will address only the issues regarding Plaintiff Peggy Walton's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1; and the New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16C-1, without addressing the issues that the MO addressed.

New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1 ("NMHRA"); (ii) whether a reasonable jury could find that there is a causal connection between the adverse action taken against Walton and her engagement in the protected activity; (iii) whether Walton's complaints to Defendant Donald Britt, the Assistant Commissioner over the New Mexico State Land Office's ("Land Office") Commercial Resource Division, constituted a protected disclosure under the New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16C-1 ("NMWPA"); and (iv) whether adverse action was taken against Walton because of a protected disclosure under the NMWPA. The Court will grant the MSJ as it pertains to Walton's Title VII and NMHRA retaliation claims, because Walton has not presented evidence establishing a causal connection between her engagement in a protected activity -- reporting Delma Bearden's alleged misconduct -- and the adverse action taken against Walton -- her termination. Additionally, the Court will grant the MSJ as it pertains to Walton's NMWPA claim, because Walton has not produced evidence establishing a connection between her protected disclosure and the adverse action taken against her.[2]

### LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin." Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3). The Court has noted that Title VII generally protects individuals from employers' improperly motivated adverse treatment in the workplace: "Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire

---

[2]The Court set forth the factual and procedural background in the previous Memorandum Opinion filed, September, 12, 2014 (Doc. 91).

or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007)(Browning, J.)(quoting 42 U.S.C. § 2000e-2(a)(1)) (internal quotation marks omitted)(alterations omitted).   With the 1972 amendments to the statute, Title VII's protections apply to federal and private employees.  See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. §  2000e(b)).

At the motion-to-dismiss stage, the plaintiff need not plead facts stating a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to state a plausible claim for relief:

> [A]lthough the plaintiff need not plead facts that constitute a prima facie case under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 . . . (1973), in order to survive a motion to dismiss, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 . . . (2002), a civil rights plaintiff retains the burden of alleging facts sufficient to state a claim entitling her to relief.

Harman v. Unisys Corp., 356 F. App'x 638, 640 (D.C. Cir. 2009)(unpublished)(citing Jordan v. Alternative Res. Corp., 458 F.3d 332, 346-47 (4th Cir. 2006)).  See Gerald v. Locksley, 849 F. Supp. 2d 1190, 1221 (D.N.M. 2011)(Browning, J.)("A civil rights plaintiff need not plead facts that constitute a prima facie case under the framework of McDonnell Douglas Corp. v. Green . . . to survive a motion to dismiss.  Nevertheless, the plaintiff retains the burden to allege facts sufficient to state all the elements of her claim."  (internal quotation marks omitted) (alterations omitted)(quoting Prince-Garrison v. Md. Dep't of Health and Mental Hygiene, 317 F. App'x 351, 353 (4th Cir. 2009)(unpublished))).  See also Messina v. Kroblin Transp. Sys., Inc., 903 F.2d 1306, 1308 (10th Cir. 1990)("McDonnell Douglas inferences provide assistance to

a judge as he addresses motions to dismiss, for summary judgment, and for directed verdict . . . .").

### 1.      <u>Reverse Discrimination.</u>

Title VII "proscribe[s] racial discrimination . . . against whites on the same terms as racial discrimination against nonwhites." <u>McDonald v. Santa Fe. Trail Transp. Co.</u>, 427 U.S. 273, 279-80 (1976).  In these reverse-discrimination cases, the protected-class requirement for a prima facie case under <u>McDonnell Douglas Corp. v. Green</u> is substituted for the requirement that the plaintiff show facts to support an inference that "the defendant is one of those unusual employers who discriminates against the majority . . . ." <u>Notari v. Denver Water Dept.</u>, 971 F.2d 585, 589 (10th Cir. 1992).  <u>See</u> <u>Adamson v. Multi Cmty. Diversified Servs., Inc.</u>, 514 F.3d 1136, 1149 (10th Cir. 2008)("When plaintiff is a member of a historically favored group, by contrast, an inference of invidious intent is warranted only when 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" (quoting <u>Notari v. Denver Water Dept.</u>, 971 F.2d at 589)).

### 2.      <u>Law on Claims for a Hostile Work Environment.</u>

"To establish a prima facie case of hostile work environment harassment, a plaintiff must show that 'under the totality of circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" <u>Bloomer v. United Parcel Serv., Inc.</u>, 94 F. App'x 820, 825 (10th Cir. 2004)(unpublished)[3](quoting <u>Witt v. Roadway Express</u>, 136 F.3d 1424, 1432 (10th

---

[3]<u>Bloomer v. United Parcel Service Inc.</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.

Cir. 1998)).   See Carter v. Mineta, 125 F. App'x 231, 238 (10th Cir. 2005)(unpublished);

Mitchell v. City & Cnty. of Denver, 112 F. App'x 662, 671 (10th Cir. 2004)(unpublished).   To

establish a hostile-work-environment claim, "a plaintiff must show that a rational jury could find

that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."   Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th

Cir. 1998)(citations omitted)(internal quotation marks omitted).   "A discriminatory and abusive

environment must affect the employee's work environment so substantially as to make it

intolerable for her to continue . . . ."   Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170 (10th

Cir. 1996)(holding that a work environment did not contain "pervasive" harassment when the

---

See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court finds that Bloomer v. United Parcel Service Inc.; Blackwell v. Strain 496 F. App'x 836 (10th Cir. 2012)(unpublished); Robinson v. Cavalry Portfolio Services LLC, 365 F. App'x 104 (10th Cir. 2010)(unpublished); Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008)(unpublished); Carter v. Mineta, 125 F. App'x 231 (10th Cir. 2005)(unpublished); Mitchell v. City and County of Denver, 112 F. App'x 662 (10th Cir. 2004)(unpublished); Walker v. United Parcel Service of America, 76 F. App'x 881 (10th Cir. 2003)(unpublished); Adams v. Washburn Univ. of Topeka, 66 F. App'x 819 (10th Cir. 2003)(unpublished); and Shinwari v. Raytheon Aircraft Co., 215 F.3d 1337, 2000 WL 731782 (10th Cir. 2000)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Supplemental Memorandum Opinion.

plaintiff made general allegations of frequent "sexual slurs" and the only specific incident cited involved a co-worker grabbing the plaintiff).

"The mere utterance of a statement which engenders offensive feelings in an employee would not affect the conditions of employment to a sufficiently significant degree to violate Title VII." Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995)(alteration omitted) (internal quotation marks omitted)(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). A plaintiff must allege more than "'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'" Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005)(citation omitted)(quoting Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994)). "Instead, 'there must be a steady barrage of opprobrious racial comments.'" Chavez v. Mexico, 397 F.3d at 832 (quoting Bolden v. PRC, Inc., 43 F.3d at 551).

The Tenth Circuit has stated that "[p]ervasiveness and severity are independent and equal grounds" upon which a plaintiff may establish this element of a hostile-work-environment claim. Witt v. Roadway Express, 136 F.3d at 1432 (addressing a hostile-work-environment claim under 42 U.S.C. § 1981). See Aramburu v. Boeing Co., 112 F.3d 1398, 1410 (10th Cir. 1997)(citing Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994), for the proposition that "standards and burdens under § 1981 are the same as those under Title VII"). Moreover, the plaintiff must demonstrate that the work environment was objectively and subjectively offensive, but need "not demonstrate psychological harm, nor . . . show that her work suffered as a result of the harassment." Walker v. United Parcel Serv. of Am., 76 F. App'x 881, 885 (10th Cir. 2003)(unpublished). In addition to all the circumstances, relevant considerations to determine if an environment is objectively hostile include "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)(quoting Harris v. Forklift Sys., Inc., 510 U.S. at 21)(citations omitted)(internal quotation marks omitted).

### 3.    **Disparate Treatment Discrimination.**

"To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, a plaintiff must show that [the] employer intentionally discriminated against [the plaintiff] for a reason prohibited by the statute." Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1306 (10th Cir. 2005).  To do so, courts apply the burden-shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green, which initially places the burden on the plaintiff to prove a prima facie case of discrimination.  See, e.g., EEOC v. PVNF, LLC, 487 F.3d 790, 800-01 (10th Cir. 2007).

The elements that the Supreme Court laid out in McDonnell Douglas Corp. v. Green addressed only a refusal to rehire.  Accordingly, the articulation of a plaintiff's prima facie case "varies depending on the type of adverse action the employee alleges was discriminatory." EEOC v. PVNF, LLC, 487 F.3d at 800 (citing Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005)). See 1 Lex K. Larson, Employment Discrimination § 8.08[1], at 8-103 (2d ed. 2012)("[C]ourts have applied the McDonnell Douglas prima facie case, sometimes modifying the proof requirements to fit the specific facts of the case, to cases involving promotion, discharge, demotion, discipline, layoffs, and other types of employer actions.").  Generally, to prove a disparate-treatment discrimination claim at the summary judgment stage, "a prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class;

(2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." EEOC v. PVNF, LLC, 487 F.3d at 800. See Sorbo v. United Parcel Serv., 432 F.3d 1169, 1173 (10th Cir. 2005)(holding that a "prima facie case for discrimination" requires the "plaintiff to show that (1) he belongs to the protected age group; (2) his job performance was satisfactory; (3) adverse employment action was taken against him; . . . [in (4)] 'circumstances giving rise to an inference of discrimination'" (quoting Salguero v. City of Clovis, 366 F.3d 1168, 1175 (10th Cir. 2004))(citing Plotke v. White, 405 F.3d at 1101; Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002))); Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000)). A prima facie case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that: (1) the plaintiff is a racial minority, (2) the plaintiff was disciplined by the employer, and (3) the employer imposed the discipline under circumstances giving rise to an inference of racial discrimination. Cf. Mathews v. Denver Newspaper Agency LLP, 649 F.3d 1199, 1208 (10th Cir. 2011)("[The plaintiff] bears the initial burden of . . . presenting evidence that (i) he is a member of a protected class, (ii) he was qualified for the job as Unit Supervisor, (iii) he was demoted from that job, and (iv) the position was not eliminated." (citing Jones v. Denver Post Corp., 203 F.3d at 753)).[4]

---

[4]The Court has previously written: "To establish a prima-facie case of discrimination, a plaintiff must demonstrate that: (i) she is a member of a protected class; (ii) she suffered an adverse-employment action, and (iii) similarly situated employees were treated differently." Gerald v. Locksley, 785 F. Supp. 2d at 1099. The Court cited to the Tenth Circuit's August, 2005, decision of Orr v. City of Albuquerque 417 F.3d 1149 (10th Cir. 2005), in which the Tenth Circuit stated: "To make out a prima facie case of discrimination, the female Plaintiffs must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." Orr v. City Of Albuquerque, 417

4.      **Disparate Impact Discrimination**.

"Title VII forbids not only intentional discrimination based on disparate treatment but also 'practices that are fair in form, but discriminatory in operation,' most often referred to as

---

F.3d 1140, 1149 (10th Cir. 2005). Only a few months after Orr v. City Of Albuquerque, in December, 2005, the Tenth Circuit held that the district court's inclusion in the plaintiff's prima facie case of showing "comparable employees who were not in a protected class did not receive comparable adverse employment action" was the "recitation of an outmoded prima facie case test" and that showing disparate treatment of similarly situated individuals is only one way to prove the third McDonnell Douglas Corp. v. Green element. Sorbo v. United Parcel Serv., 432 F.3d at 1173. The Tenth Circuit recognized that the proper third element is -- and had been since at least 1999 -- the broader prima facie requirement that the defendant took the adverse employment action under "circumstances giving rise to an inference of discrimination." Sorbo v. United Parcel Serv., 432 F.3d at 1173 (citing Perry v. Woodward, 199 F.3d 1126, 1135-40 (1999); Salguero v. City of Clovis, 366 F.3d at 1175; Plotke v. White, 405 F.3d at 1101; Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d at 1181; Jones v. Denver Post Corp., 203 F.3d at 753). It noted that, "[w]hile this broader requirement may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case." 432 F.3d at 1173. At the same time, the Tenth Circuit pointed out that its precedent has been inconsistent on whether a prima facie discrimination case requires showing similarly situated individuals were treated more favorably: "As noted in Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1307 n.1 (10th Cir. 2005), this court's own jurisprudence has not been entirely consistent in this regard." Sorbo v. United Postal Serv., 432 F.3d at 1173 n.4 (citing, as an e.g. cite, MacKenzie v. City & Cnty. of Denver, 414 F.3d at 1277).

Similarly, in the context of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"), which also applies the McDonnell Douglas Corp. v. Green prima facie case framework, the Supreme Court declared: "Because it lacks probative value, the fact that a[] . . . plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996). The Supreme Court held that "the proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" 517 U.S. at 312-13 (emphasis in original)(quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)). The Court, therefore, concludes that its articulation of the McDonnell Douglas Corp. v. Green prima facie case elements for discrimination in Gerald v. Locksley, based on the Tenth Circuit's decision in Orr v. City of Albuquerque, which was among the Tenth Circuit's jurisprudence "not . . . entirely consistent in this regard," Sorbo v. United Postal Serv., 432 F.3d at 1173 n.4, is not the best statement of the law.

'disparate impact' discrimination." Tabor v. Hilti, Inc., 703 F.3d 1206, 1220 (10th Cir. 2013) (citing Lewis v. City of Chicago, 560 U.S. 205 (2010)).  More specifically, disparate impact cases "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

"'The first step in raising a disparate-impact claim is to identify the specific employment practice allegedly causing the discriminatory impact.'" Tabor v. Hilti, Inc., 703 F.3d at 1221 (quoting Carpenter v. Boeing Co., 456 F.3d 1183, 1193 (10th Cir. 2006)).  To succeed in a disparate impact claim, a plaintiff must prove the existence of employment practices "that are fair in form, but discriminatory in operation." Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971).  See Carpenter v. Boeing Co., 456 F.3d at 1187 ("A plaintiff may establish a prima facie case of disparate impact discrimination by showing that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group."  (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1312 (10th Cir. 1999))).  Consequently, in disparate impact cases, unlike disparate treatment cases, proof of discriminatory motive is irrelevant.  See Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1242 (10th Cir. 1991).

The Supreme Court has held that statistical evidence alone is sufficient to establish a prima facie case of disparate impact discrimination.  See Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 307-08 (1977)("Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination."); Tabor v. Hilti, Inc., 703 F.3d at 1222 ("'Statistical evidence is an acceptable, and common, means of proving disparate impact.'"  (quoting Carpenter v. Boeing Co., 456 F.3d at 1202)).  Statistics are

not irrefutable, however, and any proffered statistical analysis "must involve the appropriate comparables, and must 'cross a threshold of reliability before it can establish even a prima facie case of disparate impact.'" Ortega v. Safeway Stores, Inc., 943 F.2d at 1243 (citation omitted) (quoting Allen v. Seidman, 881 F.2d 375, 378 (7th Cir. 1989)). See Int'l Bhd. of Teamsters v. United States, 431 U.S. at 340 (noting that statistics "come in infinite variety and, like any other kind of evidence, they may be rebutted").

"[F]or statistical evidence to create an inference of discrimination, the statistics must . . . eliminate nondiscriminatory explanations for the disparity." Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994)(quoting Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991)). See Martinez v. Wyoming, 218 F.3d at 1139; Doan v. Seagate Tech., Inc., 82 F.3d 974, 979 (10th Cir. 1996). "[S]tatistical evidence . . . may be diluted by factors such as an inadequate sample size and failure to consider similarly situated individuals." Ram v. N.M. Dep't of Env't, No. CIV 05-1083 JB/WPL, 2006 WL 4079623, at *9 (D.N.M. Dec. 15, 2006) (citing Mayor of Philadelphia v. Educ. Equal. League, 415 U.S. 605, 621 (1974); Martinez v. Wyoming, 218 F.3d 1133, 1138-39 (10th Cir. 2000)).

As a threshold matter, therefore, "[t]he statistics must . . . relate to the proper population. For example, when the claim is disparate impact in hiring, the statistics should be based on data with respect to persons qualified for the job." Carpenter v. Boeing Co., 456 F.3d at 1196. The Tenth Circuit has explained that the statistical data must concern those people subjected to the challenged employment action:

> After specifying the employment practice allegedly responsible for excluding members of their protected class from a benefit, plaintiffs must identify the correct population for analysis. In the typical disparate impact case the proper

> population for analysis is the applicant pool or the eligible labor pool.  The composition of this population is compared to the composition of the employer's workforce in a relevant manner, depending on the nature of the benefit sought.

Carpenter v. Boeing Co., 456 F.3d at 1196 (quoting Smith v. Xerox Corp., 196 F.3d 358, 368 (2d Cir. 1999)).

Assuming that the statistical evidence concerns the correct population, the Tenth Circuit recently laid out a three-element analysis for a disparate-impact prima facie case, holding that the district court must analyze three issues: (i) the size of the disparity between those with the status allegedly suffering discrimination and those without the status; (ii) the statistical significance of the disparity, measured by standard error rate or standard deviation; and (iii) whether statistical evidence effectively isolates the challenged employment action.  See Tabor v. Hilti, Inc., 703 F.3d at 1222 (stating that, for a prima facie case of disparate impact against women, "we are concerned with three issues: (1) the size of the disparity between male and female promotions; (2) the statistical significance of the disparity, measured by standard error rate or standard deviation; and (3) whether the statistical evidence effectively isolates the challenged employment practice").  In relation to the first issue, the size of the disparity between those with the status alleged to be the basis of the alleged disparate impact versus those without the status must be at least twenty percent.  See Tabor v. Hilti, Inc., 703 F.3d at 1222 (noting that the EEOC "guidelines provide that a disparity of 20% or more in selection rate will be considered evidence of adverse impact in a disparate impact claim" and that, "[a]lthough not controlling on courts, this guideline is persuasive").  As to the statistical significance of the disparity, the Tenth Circuit has noted that "'[t]he Supreme Court has recognized that a disparity of more than two or three standard deviations in a large sample makes suspect the contention that the differential occurs

- 12 -

randomly.'" Tabor v. Hilti, Inc., 703 F.3d at 1223 (holding that "Ms. Tabor's evidence was statistically significant at 2.777 standard errors," as to which the plaintiff's expert concluded "the probability is less than 0.006 that a disparity at least as large as this could occur solely as the result of chance factors, if promotions were unrelated to sex" (internal quotation marks omitted)(quoting Carpenter v. Boeing Co., 456 F.3d at 1195)).  The third issue -- whether the statistical evidence isolates the challenged adverse employment practice or action -- means that the plaintiff must "isolate[] the specific employment practice by controlling for key factors outside the challenged practice that could potentially cause or contribute to the disparity."  Tabor v. Hilti, Inc., 703 F.3d at 1223 (citing Carpenter v. Boeing Co., 456 F.3d at 1196).  The Tenth Circuit has explained that this third element is "important because it goes directly to causation" and that an employer will not be liable for disparate impact which is caused by circumstances outside of the employer's control.  Tabor v. Hilti, Inc., 703 F.3d at 1223-24 ("An employer will not, for example, be liable for a gender imbalance in its work force that 'is due to a dearth of qualified female applicants (for reasons that are not the employer's fault).'"  (alterations omitted)(quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 651 (1989), superseded by statute on other grounds by 42 U.S.C. § 2000e–2(k))).

### 5.    Title VII Retaliation.

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 (10th Cir. 2007)(quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452

F.3d at 1202).  "To establish that a causal connection exists," a plaintiff "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006)).  Generally speaking, if this temporal proximity between the protected activity and the adverse action are not "very close in time," the plaintiff "must offer additional evidence to establish causation."  Proctor v. United Parcel Serv., 502 F.3d at 1209 (internal quotation marks omitted)(quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d at 1228).

**6.      Materially Adverse Employment Action.**

The Tenth Circuit liberally defines what constitutes an adverse employment action.  See Orr v. City of Albuquerque, 417 F.3d 1144, 1150 (10th Cir. 2005)("Because of the remedial nature of Title VII lawsuits, we broadly define adverse employment action.").  The Tenth Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or benefits.  Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand.  Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.

Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998)(internal quotation marks omitted)(citations omitted).  See Proctor v. United Parcel Serv., 502 F.3d at 1208.  An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006).  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010)(internal quotation marks omitted) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). "We construe the phrase 'adverse employment action' liberally and do not limit it to 'monetary losses in the form of wages or benefits.'"  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004)).  Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, although "a mere inconvenience or an alteration of job responsibilities will not suffice."  Annett v. Univ. of Kan., 371 F.3d at 1239 (internal quotation marks omitted)(citation omitted).

        In  Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008) (unpublished), the Tenth Circuit, in an unpublished opinion, addressed the requirement of an adverse employment action in the context of a disparate-treatment claim and a hostile work environment claim.  There, an employee, who had been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment.  Relying on Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999), the plaintiff, Anderson, argued that the growth plan and formal reprimand rose to the level of an adverse employment action under Tenth Circuit law.  See Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999).  In discussing Anderson v. Clovis Municipal School's reliance on Schuler

v. City of Boulder, the Tenth Circuit stated in MacKenzie v. City & Cnty. of Domier, 414 F.3d 1266 (10th Cir. 2005): "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit."  414 F.3d at 1279.  See Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2007)(explaining that Title VII proscribes only discriminatory conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects [the employee's] status as an employee" (internal quotation marks omitted)).  "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."  Robinson v. Cavalry Portfolio Serv., LLC, 365 F. App'x 104, 114 (10th Cir. 2010)(unpublished)(quoting Haynes v. Level 3 Commc'ns, 456 F.3d at 1218-19)(internal quotation marks omitted).

7.    **Causal Connection.**

 "[A] Plaintiff can establish the requisite causal connection by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  Adams v. Washburn Univ. of Topeka, 66 F. App'x 819, 821-22 (10th Cir. 2003)(unpublished)(quoting Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982)).  To establish claim of retaliation under Title VII an adverse action by the defendant requires determination whether actions, which adversely affected the plaintiff, were taken by the defendant contemporaneously or shortly after the grievance was filed.  See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1263 (10th Cir. 1998).  "A causal connection may

- 16 -

be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)(quoting Burrus v. United Telephone Co. of Kansas Inc., 683 F.2d 339, 343 (10th Cir. 1982)).

"[I]t is apparent that protected activity cannot bear a causal relationship to adverse action if those taking the action were unaware of the existence of the protected action." Shinwari v. Raytheon Aircraft Co., 215 F.3d 1337, 2000 WL 731782, at *6 (10th Cir. 2000)(table opinion) (unpublished), overruled on other grounds by Crumpacker v. Kan. Dep't of Human Res., 338 F.3d 1163 (10th Cir. 2003). As a prerequisite to this showing, the plaintiff must present evidence from which a reasonable factfinder can conclude that those who decided to take the adverse action against the plaintiff had knowledge of the protected activity. See Montes v. Vail Clinic Inc., 497 F.3d 1160, 1176 (10th Cir. 2007)("To satisfy [the causal connection] element, a plaintiff must show that the individual who took adverse action against [him or her] knew of the employee's protected activity." (internal quotation marks omitted)); Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993)(holding that, when the plaintiff failed to provide any evidence showing that the defendant knew of the plaintiff's complaints the plaintiff failed to prove a "causal connection," and summary judgment was proper on the plaintiff's retaliation claim). "[A]n employer's action against an employee cannot be because of that employee's protected conduct unless the employer knows the employee has engaged in protected opposition." Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002)(emphasis in original).

## LAW REGARDING THE NMHRA

The NMHRA makes it an unlawful discriminatory practice for

> an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or gender identity . . . .

N.M. Stat. Ann. § 28-1-7(A).  The NMHRA sets out the same standard for establishing wrongful discrimination as Title VII.  See Orr v. City of Albuquerque, 417 F.3d at 1149 n.5 ("Plaintiffs' burden under the NMHRA is identical to their burden under Title VII."); Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1296-97 (10th Cir. 2013)(holding that, "because we conclude that Lobato has no Title VII claim, we also conclude he has no NMHRA claim").  The NMHRA requires an individual to first exhaust his or her administrative remedies before bringing a lawsuit.  See Luboyeski v. Hill, 117-NMSC-380, 872 P.2d 353, 355; Bates v. N.M. Corr. Dep't, No. CIV 08-1013 JB/WDS, 2010 WL 4339367, at *7 (D.N.M. Sept. 30, 2010)(Browning, J.)("NMHRA claims must be administratively exhausted before being brought in federal court.").  The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the [New Mexico Human Rights] commission's order.

N.M. Stat. Ann. § 28-1-13(A).

When considering a violation of the NMHRA the Supreme Court of New Mexico applies the framework that the Supreme Court of the United States established in <u>McDonnell Douglas Corp. v. Green</u>. <u>Juneau v. Intel Corp.</u>, 2005-NMSC-127, P.3d 548, 551. The Supreme Court of New Mexico has stated: "When considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA. Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own." <u>Ocana v. Am. Furniture Co.</u>, 2004-NMSC-018, ¶ 23, 91 P.3d 58, 68 (internal quotation marks omitted)(citations omitted). While New Mexico uses federal law to interpret the NMHRA, there may be two ways in which the NMHRA is broader than federal law.

First, as this Court has previously acknowledged, the Supreme Court of New Mexico allows for personal liability under the NMHRA. <u>See</u> <u>Duprey v. Twelfth Judicial Dist. Court</u>, No. CIV 08-0756 JB, 2009 WL 2482170, at *7 (D.N.M. July 28, 2009)(Browning, J.). The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer." N.M. Stat. Ann. § 28-1-2(B). While acknowledging that there is generally no personal liability under Title VII, the Supreme Court of New Mexico has "reject[ed] the proposition that there can exist no individual liability under the NMHRA." <u>Sonntag v. Shaw</u>, 2001-NMSC-015, ¶ 13, 22 P.3d 1188, 1193. In <u>Sonntag v. Shaw</u>, the defendant relied on Title VII case law to argue that employees cannot sue the owner of a corporation in the owner's individual capacity under the NMHRA. <u>See</u> 2001-NMSC-015, ¶ 13, 22 P.3d at 1193. Although the Supreme Court of New Mexico held that the defendant could not be held personally liable, given that the plaintiff failed to exhaust administrative remedies, it declined to close the door on

individual liability under the NMHRA.  See 2001-NMSC-015, ¶ 13.  The Supreme Court of New

Mexico noted:

> [T]his Court has acknowledged the possibility of individual liability for
> discrimination claims.  Cf. Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353,
> 355 (1994)(affirming the dismissal of individual defendants because the plaintiff
> failed to exhaust administrative remedies against them); Mitchell-Carr v.
> McLendon, 1999-NMSC-025, ¶10, 127 N.M. 282, 980 P.2d 65 (citing
> Luboyeski).   As Plaintiff suggests, the potential for individual liability for
> discrimination claims is rooted in the language of the NMHRA itself, which
> forbids "any person" from supporting a discriminatory practice.   Section
> 28-1-7(i); see N.M.S.A. 1978, § 28-1-2(A) (1993) (including within its definition
> of "person" for purposes of the NMHRA, "one or more individuals").

2001-NMSC-015, ¶ 12.  Second, the language of "serious medical condition" in the NMHRA,

N.M. Stat. Ann. § 28-1-7, may be broader in scope than the term disability in the ADA,

see Clayton v. Pioneer Bank, No. CIV 07-0680 JB/LAM, 2008 WL 5787472, at *17-18 (D.N.M.

Dec. 31, 2008)(Browning, J.)(recognizing that, although "the terms 'medical condition' under

the NMHRA, and 'disability,' under the ADA, may be interchangeable in some cases[,]" they

may not be the same in others).

## LAW REGARDING THE FEDERAL WHISTLEBLOWER PROTECTION ACT

The federal WPA provides:

> **(b)**     Any employee who has authority to take, direct others to take, recommend
> or approve any personnel action, shall not, with respect to such authority --
>
> . . .
>
> > **(8)**     take or fail to take, or threaten to take or fail to take, a
> > personnel action with respect to any employee or applicant
> > for employment because of --
> >
> > > **(A)**     any disclosure of information by an
> > > employee or applicant which the employee
> > > or applicant reasonably believes evidences --

> **(i)**    any violation of any law, rule, or regulation, or
>
> **(ii)**    gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,
>
>        if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs . . . .

5 U.S.C. § 2302(b)(8).  The Tenth Circuit has interpreted the federal WPA to require proof of three elements to establish a violation.  See Wells v. Shalala, 228 F.3d 1137, 1147 (10th Cir. 2000).

> To establish a prima facie case for whistleblowing under the WPA, the Plaintiff must show by a preponderance of the evidence that: (1) he made a protected disclosure; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.

Wells v. Shalala, 228 F.3d at 1147.  The employee has the burden of showing that he or she made a protected disclosure.  See McBride v. Peak Wellness Ctr., Inc., 688 F.3d 698, 704 (10th Cir. 2012); DeSantis v. Napolitano, 716 F. Supp. 2d 1100, 1107 (D.N.M. 2010)(Browning, J.).

To be protected from retaliation, an employee must reasonably believe the conduct he or she reports violates a federal statute or regulation.  See Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dept. of Labor, 717 F.3d 1121, 1132 (10th Cir. 2013).  The reasonable belief

test includes both a subjective and an objective component; an employee must subjectively believe in the unlawfulness of the employer's actions and that belief must be objectively reasonable.  See Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dept. of Labor, 717 F.3d at 1132.  "Objective reasonableness is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee."  Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dept. of Labor, 717 F.3d at 1132 (citation omitted)(internal quotation marks omitted).  The question is whether a disinterested observer, with knowledge of the essential facts known and readily ascertainable by the employee, could reasonably conclude that the employer's actions evidence the conduct described in 5 U.S.C. § 2302(b).  See Glapion v. Castro, No. CIV 1401699 MEH, 2015 WL 507006, at *6 (D. Colo. Feb. 4, 2015)(Hegarty, J.).  "[T]he contributing factor standard was intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a significant, motivating, substantial, or predominant factor in a personnel action in order to overturn that action."  Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dept. of Labor, 717 F.3d at 1136 (citation omitted)(internal quotation marks omitted).

## LAW REGARDING THE NEW MEXICO WHISTLEBLOWER'S PROTECTION ACT

The New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16C-1 provides:

A public employer shall not take any retaliatory action against a public employee because the public employee:

    A.    communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;

>  **B.**   provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or
>
>  **C.**   objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

N.M. Stat. Ann. § 10-16C-3.  A "retaliatory action" for purposes of the NMWPA means "taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment."  N.M. Stat. Ann. § 10-16C-2(D).  An "unlawful or improper act" means:

>  **E.**   . . . a practice, procedure, action, or failure to act on the part of a public employer that:
>
>  **(1)**   violates a federal or state law, regulation, or administrative rule;
>
>  **(2)**   constitutes malfeasance in public office; or
>
>  **(3)**   constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

N.M. Stat. Ann. § 10-16C-2(E).  A plaintiff must file an action for a NMWPA violation within two years from the date on which the retaliatory action occurred.  See N.M. Stat. Ann. § 10-16C-6.

In Lobato v. New Mexico Environmental Department, the plaintiff raised the same arguments for his NMWPA claims as for his Title VII claim, asserting that his communications with his employer showed that each of the employer's justifications for the plaintiff's dismissal was pretextual.  See 733 F.3d at 1286.  The defendants fired the plaintiff because of his dishonesty, failure to cooperate with management, and unprofessional attitude toward coworkers

and the public.  See 733 F.3d at 1285.  The defendants' reasons for firing the plaintiff were non-retaliatory, considering that there was no evidence in the record indicating that the defendants knew about the plaintiff's protected conduct.  See 733 F.3d at 1288.  The plaintiff did not raise any inconsistency, weakness, or contradiction in the defendants' decision which would suggest to a reasonable factfinder that the defendants' proffered reasons for dismissal should be disbelieved.  See 733 F.3d at 1293.  "[A]s discussed above, those arguments and supporting facts are insufficient to raise a genuine dispute about whether [the defendant] fired Lobato for any reason other than the nonretaliatory justifications provided in Lobato's dismissal letter.  Accordingly, Lobato has not raised a genuine dispute of material fact for this claim either." Lobato v. N.M. Env't Dep't, 733 F.3d at 1297.

## ANALYSIS

The Court grants the MSJ in part and denies it in part.  The Court will grant the MSJ as it pertains to the retaliation claims under Title VII and under the NMHRA that Walton, an employee of the Land Office, has brought, because Walton has not produced evidence to establish a causal connection between a protected activity and an adverse employment action. The Court will also grant the MSJ as it pertains to Walton's NMWPA claim, because she has not produced evidence showing that she was terminated because of a protected disclosure.[5]

---

[5]The Court has already denied the MSJ as it pertains to Walton's political affiliation claim.  See MO at 2-3.

## I.   WALTON DOES NOT PRESENT SUFFICIENT EVIDENCE TO ESTABLISH HER TITLE VII AND NMHRA CLAIMS.

Walton brings retaliation claims against the Land Office under Title VII and the NMHRA.[6]  Walton alleges that she complained about Bearden's workplace discrimination and that the Land Office took an adverse employment action against her because of her complaints. See Complaint ¶¶ 26, at 5.  Walton supervised Defendant Bearden, who is an employee of the Land Office.  More specifically, Walton alleges that: (i) Bearden discriminated against her on the basis of her sex and on the basis of her national origin -- because she is Hispanic; and (ii) the Land Office retaliated against her for reporting the discrimination, in violation of Title VII and the NMHRA.  See MSJ at1-2.

The Defendants argue that they did not violate Title VII or the NMHRA, because Bearden's behavior was "at best . . . colorful talk" or, at worst, "inappropriate trash talk," and because Bearden's statements were not directed at Walton.  April 9 Morning Tr. at 58:6-59:7 (Hatcher).  The Defendants also argue that Walton does not produce sufficient evidence to establish a causal connection between any protected activity and an adverse employment action. See MSJ at 17.

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin."  Brown v. Gen. Servs. Admin., 425 U.S. at 825 (citing 42 U.S.C. §§ 2000e-2, 2000e-3).  Title VII also bars an employer's retaliation if it occurs "because the employee has opposed any practice that is made an unlawful employment practice

---

[6]Originally, Walton alleged that the Defendants discriminated against her.  See Complaint ¶¶ 23-24, at 5.  The parties stipulated, however, to the dismissal of these claims.  See Stipulated Order of Dismissal of Certain Claims, filed February 24, 2014 (Doc. 69).

by Title VII." Petersen v. Utah Dep't of Corr., 301 F.3d at 1188 (alterations omitted)(citing 42 U.S.C. § 2000e-3(a)). The NMHRA sets forth the same standard for establishing wrongful retaliation as Title VII. See Orr v. City of Albuquerque, 417 F.3d at 1149 n.5 ("Plaintiffs' burden under the NMHRA is identical to their burden under Title VII."). Because Walton does not present sufficient evidence to establish a Title VII violation, her NMHRA claim also fails.

Walton must satisfy a three-part test to establish a prima facie retaliation claim. She must show that: (i) she engaged in protected conduct; (ii) a reasonable employee would have found the challenged action materially adverse; and (iii) there is a causal connection between her protected conduct and the materially adverse action. See Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202). Walton satisfies the first two elements, but does not present evidence to support the third.

First, Walton engaged in a protected activity. Walton submitted written complaints to Britt and verbally complained about Bearden's conduct. Complaints to superiors about discriminatory conduct constitute protected activity. See O'Neal v. Ferguson Const. Co., 237 F.3d at 1255 (holding that letters that the plaintiff sent to his supervisor constituted protected activity); Pastran v. K-Mart Corp., 210 F.3d 1201, 1205 (10th Cir. 2000)(holding that, when the plaintiff filed complaints with his supervisor, he engaged in a protected activity). Walton thus satisfies the first prong. Second, as the Defendants concede, the RIF was an adverse employment action. See MSJ at 16 ("The RIF was an adverse employment action."). Termination of employment constitutes an adverse employment action. See Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 744 (1998)(holding that an employer may be liable when the

plaintiff alleges an adverse employment consequence, such as firing or demotion).  Accordingly, Walton also satisfies the second prong.

Walton's claims, however, run into problems on the third prong -- causation.  "To establish that a causal connection exists," Walton "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d at 1215).  Walton formally reported Bearden's discriminatory conduct to Britt on April 7, 2011 and May 6, 2011.[7]  Britt did not decide to terminate Walton's position, and he did not know that Walton's position would be eliminated until after Defendant Ray Powell, the Land Commissioner, approved the final determination.  Elaine Olah, who served as Assistant Commissioner over the Land Office's Administrative Services Division, identified Walton's position for the RIF on March 30, 2011, and Powell approved the plan on April 6, 2011.  Because Walton sent Britt the electronic-mail transmission on April 7, 2011, she submitted her formal complaint after Olah and Powell had already decided to terminate her position.  Walton submitted a written memorandum to Britt, outlining her concerns about Bearden, on May 6, 2011.  This complaint also occurred after Olah and Powell decided to terminate her position.  Because Walton commenced the formal complaints after Olah and Powell made the decision to terminate Walton's position, they cannot be the cause for her termination, thus negating the causation element.

---

[7]Walton dated the formal memorandum complaint April 29, 2011; however, it was not delivered to Britt until May 6, 2011.  See Walton Aff. ¶ 32, at 12.

Throughout February, March, and April, 2011, Walton made informal complaints to Britt by verbally reporting her concerns about Bearden's conduct.  Protected conduct includes filing formal charges and voicing informal complaints to superiors.  See Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1016-1017 (10th Cir. 2004)(holding that the plaintiff engaged in protected conduct when he verbally complained during a meeting).  Even though Walton made oral complaints to Britt before she was identified for the RIF, Walton has not presented evidence showing that Olah or Powell knew about Bearden's discriminatory treatment, or had any knowledge of her informal complaints.[8]  Walton, thus, does not satisfy the causation prong.

This case is similar to Williams v. Rice, 983 F.2d 181 (10th Cir. 1993).  There, the Tenth Circuit held that, because the plaintiff could not prove that the individual who took adverse action against her knew about her protected activity, there was no causal connection between the plaintiff's protected conduct and the adverse action.  See Williams v. Rice, 983 F.2d at 181. Walton has the burden of proving every element of her claim.  See Pastran v. K-mart Corp., 210 F.3d at 1205 ("The plaintiff bears the initial burden of establishing a prima facie case."). Accordingly, Walton must present some evidence that Olah and Powell had knowledge of her protected activity.  She has not, however, presented such evidence.  Because Walton cannot establish an essential element, her retaliation claim fails.

Walton argues that the subordinate basis theory -- also known as the cat's paw doctrine -- applies.[9]  Walton argues that Sandra Lopez, the Land Office's Human Resources Manager, knew

---

[8]There is also no evidence that Olah or Powell knew about the formal complaints.

[9]The Supreme Court has explained the origin of the term cat's paw:

about her protected activity and that, because Lopez was Olah's supervisor, Lopez influenced

Olah in terminating Walton.  See Response at 18.  A necessary element to the cat's paw theory is

that the decisionmaker uncritically relied on the facts provided by the biased supervisor.  See

Lobato v. N.M. Env't Dep't, 733 F.3d at 1294.  The cat's paw theory cannot succeed unless

Lopez -- the non-decisionmaker -- exercised such singular influence over the decisionmakers --

Olah and Powell -- that their decision to terminate Walton was the product of blind reliance.  See

Staub v. Proctor Hosp., 562 U.S. 411, 416 (2011).  If there is no such reliance -- that is to say, if

the employer's decision maker independently verifies the facts and does not rely on the biased

source -- then the subordinate bias theory does not apply.  See Staub v. Proctor Hosp., 562 U.S.

at 416 (holding that an employer is not liable unless a discriminatory animus motivates the de

facto decisionmaker -- the technical decisionmaker or the agent for whom he is the cat's paw).

An employer is, thus, not liable under the cat's paw theory unless he or she relied on facts from

the biased subordinate in ultimately deciding to take the adverse employment action.  Walton

must present evidence that Lopez -- the subordinate -- communicated unfavorable facts to Olah

and Powell -- the supervisors -- so that Olah and Powell could rely on the unfavorable facts that

Lopez  provided.  See Lobato v. N.M. Env't Dep't, 733 F.3d at 1294.  Here, Walton, not only

---

The term "cat's paw" derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by Posner in 1990.  In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire.  After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing.  A coda to the fable (relevant only marginally, if at all, to employment law) observes that the cat is similar to princes who, flattered by the king, perform services on the king's behalf and receive no reward.

Staub v. Proctor Hosp., 562 U.S. 411, 416 (2011)(citation omitted).

fails to show that Olah and Powell knew about Walton's protected activity -- that she complained to Britt -- before deciding to terminate Walton, but Walton also fails to present evidence that Lopez communicated her bias against Walton, or any unfavorable facts concerning Walton, to Olah or Powell.  Without evidence of any communication, Walton's cat's paw theory fails.

Because neither Olah nor Powell had any knowledge of Walton's protected activity, Walton does not satisfy the causal connection prong.  The Court will, accordingly, dismiss Walton's retaliation claims.

## II.    WALTON DOES NOT PRESENT SUFFICENT EVIDENCE TO ESTABLISH A CLAIM UNDER THE NMWPA.

Walton also brings a NMWPA claim against the Land Office.  See Complaint ¶ 1, at 1. Walton alleges that she made a protected disclosure and that the Land Office took an adverse employment action against her because of her protected disclosure.  Specifically, Walton alleges that the Land Office retaliated against her -- terminating her -- after she submitted complaints about workplace conduct to her supervisor, Britt.  The Defendants argue that Walton did not make a protected disclosure and that, even if Walton made such a disclosure, her NMWPA claim fails because she does not provide sufficient evidence to establish a causal connection.  See MSJ at 20.

The New Mexico Legislature enacted the NMWPA in 2009, and there is not much case law construing it.  Both parties assert that the Court should look to the federal WPA to construe the NMWPA.  The NMWPA and the federal WPA require the same elements for establishing a prima facie case.  Both require proof of three elements: (i) the employee engaged in a protected disclosure; (ii) the employer took an adverse employment action against the employee; and (iii) a

- 30 -

causal connection exists between the protected disclosure and the adverse action.  See N.M. Stat.

Ann. § 10-16C-3; 5 U.S.C. § 2302.  First, the NMWPA protects disclosures of unlawful and

improper acts.  Under the NMWPA, a protected disclosure occurs when an employee:

> **A**.     communicates to the public employer or a third party information about an
> action or a failure to act that the public employee believes in good faith
> constitutes an unlawful or improper act;

> **B**.     provides information to, or testifies before, a public body as part of an
> investigation, hearing or inquiry into an unlawful or improper act; or

> **C**.     objects to or refuses to participate in an activity, policy or practice that
> constitutes an unlawful or improper act . . . .

N.M. Stat. Ann. § 10-16C-3.  The NMWPA defines an unlawful or improper act as follows:

> **E**.     "unlawful or improper act" means a practice, procedure, action or failure
> to act on the part of a public employer that:

> > **(1)**     violates a federal law, a federal regulation, a state law, a
> > state administrative rule or a law of any political
> > subdivision of the state;

> > **(2)**     constitutes malfeasance in public office; or

> > **(3)**     constitutes gross mismanagement, a waste of funds, an
> > abuse of authority or a substantial and specific danger to
> > the public.

N.M. Stat. Ann. § 10-16C-2(E).  The federal WPA also protects certain disclosures.  It defines

protected disclosures as follows:

> **(D)**     "disclosure" means a formal or informal communication or transmission,
> but does not include a communication concerning policy decisions that
> lawfully exercise discretionary authority unless the employee or applicant
> providing      the      disclosure      reasonably      believes      that      the
> disclosure evidences  --

> > **(i)**     any violation of any law, rule, or regulation; or

> > **(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(2)(D).

Under the NMWPA, the second element, an adverse employment action -- referred to as a retaliatory action under the NMWPA -- is defined as: "taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment." N.M. Stat. Ann. § 10-16C-2(D). Under the federal WPA, an adverse employment action -- referred to as a personnel action under the federal WPA -- is defined as:

> **(8)** tak[ing] or fail[ing] to take, or threaten[ing] to take or fail to take, a personnel action with respect to any employee or applicant for employment because of --

> > **(A)** any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences --

> > > **(i)** any violation of any law, rule, or regulation, or

> > > **(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

5 U.S.C. § 2302(b)(8).

The federal WPA and the NMWPA both require the last element -- causation. The NMWPA causation requirement provides: "A public employee shall not take any retaliatory action against a public employee <u>because</u> the public employee" engaged in protected conduct. N.M. Stat. Ann. § 10-16C-3 (emphasis added). The public employee must take the retaliatory action <u>because of</u> a protected communication -- <u>i.e.</u> there must be a causal connection between

the retaliatory action and the protected communication. The federal WPA also contains a causation requirement. See 5 U.S.C. § 2302(b)(8) (providing that a personnel action cannot be taken "because of" a protected disclosure). The federal WPA prohibits an employer from taking "a personnel action with respect to any employee or applicant for employment because of" protected conduct. 5 U.S.C.A. § 2302(b)(8) (emphasis added). The use of the word "because" creates a causal connection requirement in both statutes. Accordingly, while different in some regards, the federal WPA provides some guidance for construing the NMWPA.

The NMWPA protects different conduct than Title VII does. The NMWPA proscribes retaliation against a public employee for, among other things, reporting conduct "that the public employee believes in good faith constitutes an unlawful or improper act." N.M. Stat. Ann. § 10-16C-3(A). There is evidence that Walton believed, in good faith, that she had reported to Britt an unlawful or improper action. By reporting Bearden's conduct to Britt, Walton shows that she believed that Bearden's conduct, at a minimum, violated the Land Office's harassment policy. The Land Office's harassment policy provides that a report of harassment should be made to an employee's supervisor. See Walton Aff. ¶ 32, at 12 ("The SLO's harassment policy provides that a report of harassment can be made to an employee's supervisor."). Accordingly, there is evidence that Walton reported conduct to Britt that she believed in good faith constituted harassment in violation of the Land Office's harassment policy.

Furthermore, while Bearden's racial and gender based comments may not be unlawful, they are likely improper. See N.M. Stat. Ann. § 10-16C-3 (protecting disclosures of "improper act[s]"). Walton has presented evidence that Bearden made inappropriate comments regarding gender and race. The Defendants argue that these actions do not amount to the unlawful and

improper conduct that the NMWPA requires.  See MSJ at 19.  Under the federal WPA, protected acts are construed broadly to encourage employees to come forward with complaints.  See Wells v. Shalala, 228 F.3d at 1146 ("The WPA proscribes any unfavorable personnel decision against an employee making certain disclosures are protected under the Act.").  Walton complained that Bearden sabotaged her work, bypassed the chain of command, bullied and intimidated her, and made rude, sexually inappropriate remarks.  See Complaint ¶ 13, at 13.  Even if Bearden's remarks do not reach a level of unlawful conduct, they likely reach a level of improper conduct. Because there is evidence that Walton believed in good faith she was reporting an unlawful or improper act, Walton satisfies this element for summary judgment purposes.

Walton also satisfies the second prong.  It is undisputed that the Defendants took an adverse action against her when they created and implemented the RIF.  See Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dept. of Labor, 717 F.3d at 1121 (holding that, for the federal WPA, an employee suffered adverse personnel action in the form of a discharge); Saulter v. Detroit Area Agency on Aging, 562 F. App'x 346, 351 (6th Cir. 2014)(unpublished)(holding that, for the federal WPA, the adverse action prong was undisputed, because the plaintiff was terminated).

Walton has not, however, satisfied the third prong -- causation.  Walton has the burden to establish a causal connection under the NMWPA.  See Lobato v. N.M. Env't Dep't, 733 F.3d at 1293 ("Lobato failed to meet his burden of showing pretext.").  As discussed above, the federal WPA and the NMWPA both contain causal-connection requirements.  According to Lockheed Martin Corp. v. Administration Review Board, United States Department of Labor, the Tenth Circuit held that, to establish a causal connection under the federal WPA, an employee

must show that a protected disclosure was a "contributing factor" in the unfavorable personnel decision.  Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dept. of Labor, 717 F.3d at 1129 ("To establish a prima facie case . . . a complainant must show her protected activity was a contributing factor in the unfavorable personnel action.").  Here, while Walton may have made a protected disclosure to Britt, there is no evidence that she was terminated because of her protected disclosure -- i.e., there is no causal connection between her protected disclosure and the adverse action.

Similar to the Title VII and NMHRA analysis, before implementing the RIF, Olah and Powell -- the creator and implementer of the RIF -- were unaware of the protected disclosures that Walton made.  To show that Olah knew about Walton's complaints, Walton makes the same argument that she uses to support her Title VII and NMHRA claims: that Britt forwarded Walton's complaints to Lopez, whom Olah supervised.  See Response at 20.  Just as that argument fails in the Title VII and NMHRA context, it also fails in the NMWPA context.

This case is similar to Lobato v. New Mexico Environmental Department.  There, the plaintiff's arguments for his NMWPA claim were identical to those he made in support of his Title VII claims.  See Lobato v. N.M. Env't Dep't, 733 F.3d at 1297.  The Tenth Circuit held that the plaintiff's Title VII claim failed, because evidence in the record did not support the plaintiff's contention that the defendant's reasons for his dismissal were pretextual.  See Lobato v. N.M. Env't Dep't, 733 F.3d at 1288.  The Tenth Circuit went on to hold that his NMWPA claim also failed for the same reasons.  See Lobato v. N.M. Env't Dep't, 733 F.3d at 1288.  Here, Walton's Title VII and NMHRA claims fail on the causation prong, because there is no evidence that Olah or Powell knew about her complaints to Britt.  Walton asserts the same argument to establish

causation for her NMWPA as she does for her Title VII and NMHRA claims.  See Response

at 20.  Her NMWPA claim, thus, fails for the same reasons that her Title VII and NMHRA

claims fail.  Walton does not present any evidence that Powell or Olah had any knowledge of

Walton's complaints.  If there is no evidence of knowledge, there can be no causal connection.

Walton argues that there is enough evidence that a jury could infer that Lopez discussed

her complaints with Olah.  See Evidence in Opposition ¶ 31, at 5.  There is not, however, any

evidence to support this inference.  See Blackwell v. Strain, 496 F. App'x 836, 845 (10th

Cir. 2012)(unpublished)("Because the record is devoid of any evidence that supports these

inferences we need not credit them.").  The Land Office policy states that, once human resources

receive a written complaint alleging inappropriate behavior, Lopez is to meet with the supervisor

-- Britt -- and provide a copy to the deputy commission, who was Robert Jenks, and not Olah, at

the time.  See Walton Aff. ¶ 17, at 38 ("The SLO's harassment policy provides that a report of

harassment can be made to an employee's supervisor.").  Walton, thus, may have presented

sufficient evidence to create an inference that Jenks and Lopez were aware of Walton's

complaints against Bearden, but she does not provide any evidence to create the inference that

Olah or Powell were aware of her complaints.

While the Court should draw all inferences in favor of the nonmoving party -- Walton --

if the record is devoid of any evidence to support that inference, the Court will not credit

the non-movant with the inference.  See Blackwell v. Strain, 496 F. App'x at 845 ("Because the

record is devoid of any evidence that supports these inferences we need not credit them.");

Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1312 (10th Cir. 2009)(stating that "we . . . adopt

plaintiff's version of facts, insofar as it is supported by the record"); Serna v. Colo. Dep't of

Corr., 455 F.3d 1146, 1155 (10th Cir. 2006)(reversing a district court's denial of summary judgment based on qualified immunity, because the plaintiff failed to present any evidence to support his allegations).  Olah and Powell were the decision makers, and there is no evidence in the record that they knew about Walton's complaints to Britt before they approved the RIF.

This case is similar to Swackhammer v. Sprint/United Management Co., 493 F.3d 1160 (10th Cir. 2007).  There, the Tenth Circuit held that, because the record contained no independent evidence that would allow a reasonable factfinder to infer that gender discrimination was the actual motivation for the plaintiff's termination, beyond the plaintiff's mere conjecture, the plaintiff does not create an inference of discrimination.  See Swackhammer v. Sprint/United Mgt. Co., 493 F.3d 1160, 1172 (10th Cir. 2007).  See also Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)(holding that the plaintiffs' mere conjecture that their employer's explanation was a pretext for intentional discrimination is an insufficient basis for denial of summary judgment).

Walton needs to present some evidence to create an inference of Olah's or Powell's knowledge.  Walton does not, however, present any such evidence.  Walton contends that, because Lopez is Olah's supervisor, an inference exists that Olah knew about Walton's protected disclosure.  Without evidence, however, this possibility is mere conjecture -- not an evidence backed inference.  Walton, thus, has not established the third prong -- causation.  Accordingly, the Court will dismiss Walton's NMWPA claim.

**IT IS ORDERED** that: (i) the Defendants' Motion for Summary Judgment on Plaintiff's Second Amended Complaint to Recover Damages for Discrimination and Retaliation and for Violations of Constitutional Rights, filed November 6, 2013 (Doc. 38), is granted in part and

denied in part; and (ii) Plaintiff Peggy Walton's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1; and the New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16C-1, are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jack N. Hardwick
Sommer, Udall, Sutin, Hardwick & Hyatt
Santa Fe, New Mexico

     *Attorneys for the Plaintiff*

Scott P. Hatcher
Hatcher & Tebo
Santa Fe, New Mexico

     *Attorneys for the Defendants*